Affirmed and Memorandum Opinion filed July 29, 2004









Affirmed and Memorandum Opinion filed July 29, 2004.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00273-CR

NO. 14-03-00274-CR

____________

 

AL THOMPSON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 228th
District Court

Harris County, Texas

Trial Court Cause Nos. 915,676
& 915,677

 



 

M E M O R A N D U M  O P I N I O N

A jury found appellant Al Thompson guilty
of burglary of a habitation and aggravated assault and assessed punishment at
thirty-five years= confinement and five years= confinement,
respectively.  Appellant raises six
issues on appeal.  We affirm. 

Factual and
Procedural Background








On June 19, 2002, appellant and his
long-time friend, Jerry Cooper, spent the evening together consuming drugs,
including ecstacy, marijuana, and PCP. 
In the early morning hours of June 20th, Cooper was driving appellant=s truck, when
appellant, who was riding as a passenger, started acting paranoid and thought
someone was trying to Aget@ them.  While Cooper was driving, appellant shot him
in the right leg, and when Cooper looked over at him, appellant was pointing
the gun at Cooper=s chest. 
Appellant pulled the trigger again, but the gun jammed.  Cooper then unlocked the truck door and
jumped from the moving vehicle.  Cooper
believed appellant=s unusual behavior was caused by the drugs
appellant had ingested earlier that evening.   


Shortly thereafter, at approximately 1:30
a.m., Michael Sotiropoulos and his fiancee, Tami Taylor, heard someone
screaming for help outside their second floor apartment.  They looked outside a window and saw
appellant running back and forth on a nearby roof, waiving a gun and yelling for
help.  Tami called 911 while Michael
retrieved his gun from a nearby basket. 
Appellant then jumped onto their balcony and broke into their apartment
through the french doors located on the balcony.  When appellant entered the apartment, he
pointed his gun at Michael, continued to ask for help, and stated that he
needed the police.

When a police officer arrived, he pointed
a spotlight toward the balcony where appellant, Michael, and Tami were
standing.  Michael pointed his gun at
appellant and asked him to leave. 
Appellant continued asking to call the police, so Michael directed
appellant=s attention to the police vehicle located
nearby.  Appellant then took the gun from
Michael=s hand and threw
it on the floor.  Tami picked up the gun
from the floor and told appellant to get away from Michael.  Appellant lunged for Tami, grabbed her, and
took the gun out of her hand.  At the
same time, Michael jumped on appellant to try to prevent Tami from being
injured.  Thereafter, a struggle ensued
between appellant and Michael, which ended when appellant shot Michael in the
chest at point-blank range.  Tami heard
additional shots, and believing Michael was dead, she ran from the
apartment.  Appellant dragged Michael
into the bathroom and began barricading the bedroom doors with furniture.  The police then determined a hostage
situation had developed and contacted the Houston Police Department SWAT Team.  Appellant eventually surrendered at approximately
6:30 a.m.








The jury found appellant guilty of
burglary of a habitation and aggravated assault.  After appellant pleaded true to a prior
conviction, the jury assessed punishment at thirty-five years= confinement for
the burglary offense and five years= confinement for
the aggravated assault offense. 
Appellant raises six issues on appeal, claiming the trial court erred by
(1) admitting portions of Michael Sotiropolous=s testimony
because it constituted victim impact evidence; (2) admitting empty medication
bottles because they were also victim impact evidence; (3) allowing a video
camera to record portions of the trial; (4) failing to include a jury
instruction on necessity; (5) failing to hold a hearing on appellant=s motion for new
trial; and (6) denying appellant=s motion for new
trial based on juror misconduct.  

Discussion

I.        Victim
Impact Evidence

In his first two issues, appellant
contends the trial court erroneously admitted victim impact evidence.  Specifically, appellant challenges (1)
Michael Sotiropolous=s testimony  concerning his physical and mental state of
mind after the incident and (2) the admission of empty medication bottles.  Appellant, however, failed to properly preserve
error on each of the challenged statements and on the admission of the empty
bottles.  The relevant trial testimony is
as follows:[1]

Prosecutor:  When you got out of the hospital, where did
you go?

Michael:       Friend=s house.  I was
afraid to go back to the house.

Prosecutor:  What were you afraid Of [sic]?

Defense
Counsel:   Objection, Your Honor.  

Michael:       People.

Defense
Counsel:   Relevancy of this after this
incident, unless there=s something that directly relates.

Court: Be specific in your questions.  Sustained.

*   *   *








Prosecutor:  How often do you think about what happened on
June 20th, 2002?

Michael:       Every night, every day, every moment
of my life.

Defense
Counsel:   Objection, Your Honor.

Court: That=s overruled. 
However, move along, please.

Prosecutor:  Yes, sir. How often do you think about what
happened on 

June B 

Michael:       Every moment.  Every time I have nightmares.  I can=t sleep at night.  I go see a psychotherapist.  I can=t do anything.  I take pills every two hours.  I can=t go to the bathroom.  I can=t do nothing.  I can=t live one moment. 


*   *   * 

Prosecutor:  How long are you going to have to stay on all
those pills?

Michael:       Until I don=t have pain, until the pain stops.

Prosecutor:  Do you have any idea when that would be?

Michael:       I don=t know.  I guess
[the] doctor told me within two to five years. 
Most likely I=m not going to be able to use the left two fingers again.

Appellant made only two objections during
this testimony: relevancy and a general objection.  The trial court sustained appellant=s relevancy
objection, and because appellant did not request any further relief, the trial
court granted appellant all the relief he requested.  Thus, nothing is presented for review.  See Tucker v. State, 990 S.W.2d 261,
262 (Tex. Crim. App. 1999) (stating appellant must obtain adverse ruling to
present complaint on appeal); McCoy v. State, 10 S.W.3d 50, 55 (Tex.
App.CAmarillo 1999, no
pet.) (holding that because appellant failed to request instruction to
disregard after objection was sustained, Aappellant obtained
all the relief he requested and he may not now complain on appeal@).  








Further, appellant=s general
objection was insufficient to put the trial court on notice that he was
objecting to alleged improper victim impact evidence.  Tex.
R. App. P. 33.1(a)(1) (providing objection must state legal basis, Aunless the
specific grounds are apparent from the context@).  After appellant=s initial
relevancy objection, the prosecutor questioned Michael regarding identification
of appellant and whether he gave appellant permission to enter the
apartment.  The prosecutor then asked
Michael how often he thought about the incident, to which appellant=s counsel made a
general objection.  Because appellant did
not state the grounds for the general objection, and the grounds for the
objection were not apparent from the context of the testimony, he has waived
any alleged error on review.  Id. 

Regarding admission of the empty medication
bottles, appellant objected on the grounds of Texas Rules of Evidence 401, 402
and 403 arguing that although Athere maybe [sic]
some relevancy here, it seems to be superfluous, unnecessary, confusing to the
jury and prejudicial without being really probative.@  Appellant, however, failed to object on the
basis of improper victim impact evidence; therefore, the alleged error, if any,
is waived.  Tex. R. App. P. 33.1(a)(1)(A); Rezac v. State, 782
S.W.2d 869, 870 (Tex. Crim. App. 1990). 

Accordingly, we overrule appellant=s first and second
issues.  

II.       Video
Camera

In his third issue, appellant contends the
trial court erred by allowing a video camera in the courtroom during a portion
of the trial.  Appellant claims the
camera was so intrusive that it violated his due process rights and right to a
fair trial.  In general, trial courts
have broad and plenary power to regulate trials.  State ex rel. Rosenthal v. Poe, 98
S.W.3d 194, 199 (Tex. Crim. App. 2003); Ex parte Jacobs, 664 S.W.2d 360,
363 (Tex. Crim. App. 1984).  The court
has all powers necessary for the exercise of its jurisdiction and is required
to conduct the proceedings in an orderly and expeditious manner and to control
the proceedings so that justice is done. 
Tex. Gov=t Code Ann. ' 21.001(a), (b)
(Vernon 2004).  Thus, absent a
constitutional provision, statute, or rule to the contrary, the trial court has
the power to control the procedural aspects of a case.  Poe, 98 S.W.3d at 199 (stating that in
absence of statute specifically prohibiting videotaping of jury deliberations,
it would be difficult to decide whether trial court abused its discretion); Graham
v. State, 96 S.W.3d 658, 660 (Tex. App.CTexarkana 2003,
pet. ref=d).








Appellant cites Estes v. Texas, 381
U.S. 532 (1965), to support his position that the trial court erred in allowing
the camera in the courtroom over objection. 
Estes, however, is easily distinguishable.  In Estes, the trial was widely
publicized, and the media coverage was very extensive.  Id. at 535B37.  The court referred to the intrusion of the
media as a Abombardment of the community with the
sights and sounds of a two-day hearing during which the original jury panel,
the petitioner, the lawyers and the judge were highly publicized.@  Id. at 538.  The court concluded that because of the
notoriety and omnipresence of the media, appellant=s due process
rights were violated.  Id. at 535B38, 551B52.  

In this case, the trial court allowed a
camera during the third day of trial, which consisted of the remaining
testimony of Tami Taylor, closing arguments, and the jury rendering its
verdict.[2]  Appellant objected, arguing the camera was
intrusive and might affect the jury and the other witnesses.  The trial court overruled appellant=s objection.  On appellant=s urging, the
court instructed the jury that the film crew was from Bulgaria and the camera
was present to film portions of the trial for a documentary on jurisprudence
throughout the world.  The court further
instructed the jury not to consider the fact that any portion of the film might
or might not be used for any purpose. 








Here, the trial court allowed one single
camera to film a small portion of the trial for a documentary film.  There is nothing in the record to suggest the
societal pressures and media frenzy present in Estes existed in this
case.  See Duffy v. State, 567
S.W.2d 197, 201B03 (Tex. Crim. App. 1978) (holding an
accidental filming of a few jurors for a ten to fifteen second time period is
not of sufficient magnitude to create presumption of prejudice to appellant,
thus appellant was required to show harm) . 
Additionally, there is no evidence in the record appellant was harmed or
prejudiced in any way by the camera=s presence.  See id.  Accordingly, we conclude the trial court did
not abuse its discretion by allowing a single camera in the courtroom to film a
small portion of the trial.  We overrule
appellant=s third issue.  

III.      Jury
Instruction on Necessity

In his fourth issue on appeal, appellant
contends the trial court erred in failing to submit a jury instruction on the
defense of necessity.  In his brief,
appellant refers to the necessity defense only in the context of the burglary
charge; therefore, we will limit our review to whether the trial court erred in
failing to instruct the jury on the defense of necessity with respect only to
the burglary charge.  Tex. R. App. P. 38.1(e).   

Generally, a defendant is entitled to an
instruction on every defensive issue raised by the evidence, as long as such an
instruction is properly requested.  Granger
v. State, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999).    We review the evidence offered in the light
most favorable to the defense to determine whether the evidence raises a
defensive issue.  Pennington v. State,
54 S.W.3d 852, 856 (Tex. App.CFort Worth 2001,
pet. ref=d); Stefanoff
v. State, 78 S.W.3d 496, 500 (Tex. App.CAustin 2002, pet.
ref=d).  The evidence may be from any source and may
be either weak, strong, unimpeached, contradicted, or unbelievable.  Muniz v. State, 851 S.W.2d 238, 254
(Tex. Crim. App.1993); Ford v. State, 112 S.W.3d 788, 793 (Tex. App.CHouston [14th
Dist.] 2003, no pet.).  Thus, if the
defensive issue is raised from any source, and the defendant properly requests
an instruction on that issue, the trial court=s refusal to
submit the issue constitutes an abuse of discretion.  Darty v. State, 994 S.W.2d 215, 218
(Tex. App.CSan Antonio 1999, pet. ref=d).  However, if the evidence fails to raise every
element of a defensive issue, the trial court is not required to submit the
requested instruction.  Muniz, 851
S.W.2d at 254; Stefanoff, 78 S.W.3d at 500.








In order to raise the defense of
necessity, the defendant must first admit he committed the charged offense and
then offer the defense as a justification for his illegal conduct.  Young v. State, 991 S.W.2d 835, 838
(Tex. Crim. App. 1999); Ford, 112 S.W.3d at 793; Auston v. State,
892 S.W.2d 141, 145 (Tex. App.CHouston [14th
Dist.] 1994, no pet.).  In this case,
appellant was required to admit he entered a habitation without the effective
consent of the owner, Michael Sotiropoulos, and committed or attempted to
commit the felony offense of aggravated assault.  See Tex.
Pen. Code Ann. ' 30.02 (Vernon 2003).  Appellant argues that A[b]y
cross-examining these witnesses about the manner of Appellant making an entry
into the apartment, and not contesting that entry, trial counsel was admitting
that Appellant had made the entry.@  Appellant, however, failed to specifically
admit each element of the charge of burglary of a habitation; therefore, the
trial court did not abuse its discretion in omitting an instruction on
necessity.  See Young, 991 S.W.2d
at 839; Auston, 892 S.W.2d at 145 (holding trial court properly omitted
necessity instruction because A[a]ppellant did
not testify, nor present any such evidence as to his state of mind@).  We overrule appellant=s fourth issue.

IV.      Motion
for New Trial

In his final two points of error,
appellant argues the trial court abused its discretion in failing to hold a
hearing on the motion for new trial and in denying the motion.  The record shows the trial court held a
hearing on appellant=s motion for new trial on May 14, 2003;
however, the trial court denied appellant=s request to
present live testimony at that hearing. 
Since appellant received a hearing on his motion for new trial, we
presume his point of error alleges the trial court erred in not allowing
appellant to present live testimony.  Tex. R. App. P. 38.1(e).  








Texas Rule of Appellate Procedure 21.7,
which governs the type of evidence allowed at a hearing on a motion for new
trial, provides, AThe court may receive evidence by
affidavit or otherwise.@ 
The case law cited by appellant as support for his position is premised
on the fact that appellant was denied an evidentiary hearing; however, that is
not the case here.  The trial court held
a hearing on appellant=s motion for new trial and allowed the
parties to submit evidence by affidavits only, which is specifically allowed by
Rule 21.7.  Accordingly, we hold the
trial court did not abuse its discretion by not allowing appellant to present
live testimony during the hearing on his motion for new trial.  See McIntire v. State, 698 S.W.2d 652,
658 (Tex. Crim. App. 1985); Scaggs v. State, 18 S.W.3d 277, 281 (Tex.
App.CAustin 2000, pet.
ref=d).    

We must next determine whether the trial
court abused its discretion in denying the motion for new trial.  During deliberations on the punishment issue,
a juror, Murl Murphy, telephoned his wife on a cell phone while at the
courthouse.  The relevant portion of
Juror Murphy=s affidavit is as follows:

On Friday, February 28, 2003, I
spoke with my wife, Rose Murphy, on a cell phone while at the courthouse.  I asked her to change travel plans that we
had made for the next Monday, March 3, 2003. 
In response to her questioning if it was really necessary to make the
travel changes, I told her that because one juror was holding out for 20 years
and most of the rest of us wanted more time, I did not see any way the jury
could reach a decision by the end of the day. 
That was my sole statement about the case itself, and my wife did not
question me about that statement.  The
conversation was solely about re-arranging our schedule to accommodate my jury
service.

At no point during the trial did I
discuss the facts of the case with my wife or with anyone else.  At no point during the trial did I discuss
any of the issues of the case with my wife or anyone else.  At no point during the trial did my wife
comment, offer or suggest any opinion as to the outcome of the trial or what
punishment might be appropriate.  It
would be inaccurate to say that my wife and I Adiscussed@ the case or that my wife Aconversed with me@ about the case while the case was
still pending.

In no way did this phone call or
conversation influence my verdict in the case. 
My verdicts were based solely on the evidence and testimony that were
presented during the trial.  I did not
discuss this phone call with any of the other jurors.  

Appellant relies on Texas Rule of
Appellate Procedure 21.3(f), which provides, AThe defendant must
be granted a new trial . . . when a juror has talked with anyone about the
case.@  Appellant argues this rule removes any
discretion from the trial court and a new trial is automatic regardless of
whether any harm resulted.  We disagree.








When a juror converses with an
unauthorized person about the case, injury to the defendant is presumed and a
new trial may be warranted; however, the State may rebut the presumption of
harm.  Quinn v. State, 958 S.W.2d
395, 401 (Tex. Crim. App. 1997); Robinson v. State, 851 S.W.2d 216, 230
(Tex. Crim. App. 1991).  In order to
rebut the presumption, the State is required to show the accused was not
injured or prejudiced.  Stults v.
State, 23 S.W.3d 198, 206 (Tex. App.CHouston [14th
Dist.] 2000, pet. ref=d). 
Reversal may not be required if the juror testifies that he did not tell
any other members of the jury about the statement and the statement would not
influence the juror in reaching a verdict. 
Ites v. State, 923 S.W.2d 675, 77B78 (Tex. App.CHouston [1st
Dist.] 1996, pet. ref=d).

Here, Juror Murphy testified by affidavit
that the telephone call to his wife concerned rearranging travel plans for the
following Monday.  He stated his wife did
not make any comments and did not question him about the statement he made
concerning a juror holding out for twenty years.  Additionally, Murphy stated in his affidavit
that he did not discuss the case with anyone and his wife never commented,
offered or suggested any opinion as to the outcome of the trial or what
punishment was appropriate.  Murphy=s affidavit also
states that the phone call did not influence his verdict, that his verdict was
his own, and that he did not discuss the phone call with any other members of
the jury.  

The State also presented an affidavit of
Rose Murphy, Juror Murphy=s wife, which attested to the same facts
concerning the telephone conversation. 
She stated the conversation was solely about re-arranging their
schedules to accommodate her husband=s  jury service, and, in response to her
questioning about whether it was really necessary, her husband responded that Abecause one juror
was holding out for 20 years and he and others wanted more time, he did not see
any way the jury could reach a decision by the end of the day.@  Mrs. Murphy also attested that she and her
husband never discussed any of the facts or issues of the case and that she
never offered any opinions or suggestions regarding the outcome.








          By these affidavits, the State rebutted
the presumption of injury to appellant.  See
Green v. State, 840 S.W.2d 394, 406 (Tex. Crim. App. 1992) (holding State
rebutted presumption by presenting affidavits of all twelve jurors, which
stated their individual verdicts were rendered solely on evidence presented and
no one discussed the improper conduct); Robinson, 851 S.W.2d at 230
(holding State rebutted presumption of harm because juror testified statement
from her sister would not have influenced her verdict and she did not tell the
other jurors about the prejudicial statement). 
The affidavits established nothing prejudicial to appellant was said and
the conversation between Juror Murphy and Mrs. Murphy did not influence Juror
Murphy=s verdict in any
way.  Additionally, the content of the
statement was never relayed to the other jurors.  Because the State adequately rebutted the
presumption of injury, we hold the trial court did not abuse its discretion in
denying appellant=s motion for new trial.  Accordingly, we overrule appellant=s fifth and sixth
issues. 

Conclusion

Having overruled appellant=s six issues on
appeal, we affirm the judgment of the trial court.  

 

 

/s/      John S. Anderson

Justice

 

 

Judgment
rendered and Memorandum Opinion filed July 29, 2004.

Panel
consists of Justices Yates, Anderson, and Hudson.

Do
Not Publish C Tex.
R. App. P. 47.2(b).

 











[1]  Appellant specifically challenges
the emphasized text on appeal.





[2]  The reporter=s record for the third day of trial amounted to a
total of thirty-eight pages, of which the jury was present for thirty-two.  In contrast, the jury was present for
approximately 373 pages of trial proceedings before the camera was allowed in
the courtroom.